**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

PATRICIA ANN LARK,                       )
     Plaintiff,                          )
                      )
         v.                          )     CAUSE NO.: 4:17-CV-76-JEM
                      )
ANDREW SAUL, Commissioner of the         )
Social Security Administration,          )
     Defendant.                          )

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Patricia Ann Lark on October 4, 2017, and Brief of Plaintiff [DE 17], filed October 11, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On November 23, 2018, the Commissioner filed a response, and on January 4, 2019, Plaintiff filed a reply.

**I.      Procedural Background**

On December 23, 2013, Plaintiff filed an application for benefits alleging that she became disabled on June 1, 2005. Plaintiff's application was denied initially and upon reconsideration. On July 28, 2016, Administrative Law Judge ("ALJ") William E. Sampson held a video hearing, at which Plaintiff, with an attorney and a vocational expert ("VE"), testified. On October 17, 2016, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.      The claimant last met the insured status requirements of the Social Security Act on June 30, 2010.

2.      The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2005, through her date last insured of June 30, 2010.

3. Through the date last insured, the claimant had the following severe impairments: fibromyalgia, migraine headaches, Hashimoto's Thyroiditis, chronic obstructive pulmonary disease (COPD) with asthma, irritable bowel syndrome (IBS), and degenerative disc disease.

4. The claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listing impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant had the residual functional capacity (RFC) to lift and carry up to 20 pounds occasionally, 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks. The claimant was to avoid all climbing of ladders, ropes, or scaffolds, or crawling, but she could have occasionally climbed ramps and stairs, balanced, stooped, knelt, or crouched. The claimant was limited to frequent but not constant reaching, handling, and fingering in all directions, but was limited to only occasional reaching overhead, and she must have avoided all concentrated exposure to extremes of heat and cold, as well as breathing irritants such as fumes, odors, dusts, and gases, vibrations, and hazards such as dangerous moving machinery or unprotected heights. The claimant would have required a sit/stand option whereby she could have changed positions after 30 minutes of either standing or sitting.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was 48 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability as defined in the Social Security Act,

> at any time from June 1, 2005, the alleged onset date, through June 30, 2010, the date last insured.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning

of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III. Analysis

Plaintiff argues that the ALJ erred in finding that Plaintiff did not suffer from any severe impairments at step two of his analysis and that he failed to properly evaluate the medical opinions in the record. The Commissioner argues that the ALJ's findings are supported by substantial

evidence.

Plaintiff's treating physician, Dr. Clayton, opined that Plaintiff's myriad impairments kept her from doing any work. The ALJ gave the opinion "little weight," finding the limitations he expressed "grossly inconsistent with the treatment notes."

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96-5p, 1996 SSR LEXIS 2 at *15, 1996 WL 374183, at *5 (July 2, 1996)) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). "If the

ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' [her] reasons." *Elder,* 529 F.3d at 415 (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision.").

In this case, the ALJ identified the doctor as Plaintiff's treating physician and referred to the length of the treating relationship. He also described the myriad of diagnoses and treatments provided by Dr. Clayton, but then found, without explanation, that despite these many difficulties, including fibromyalgia, headaches, lower back pain, tenderness in shoulders, neck, and hips, and complaints of dizziness, the limitations described by the physician were "grossly inconsistent" with his treatment notes. The ALJ reasoned that Plaintiff could not be as limited as the physician claimed, because if Plaintiff was "completely unable to carry even a purse or walk more than one block without falling over, she would not even have been able to meet with Dr. Clayton in his office, or be sent out for x-rays, or undergo physical treatment." AR 24. The ALJ did not describe any medical records indicating inconsistencies with Dr. Clayton's opinions, and appeared to be indicating that Plaintiff's attempts to seek medical treatment for her physical difficulties mean that she cannot be experiencing severe work-related limitations from those ailments, despite the fact that Plaintiff's treating physician was specifically opining as to Plaintiff's ability to perform certain activities "in a regular, competitive work environment on an 8-hour work day basis for a continuous period of six months or more." AR 685. The only reason the ALJ gave for discounting Dr. Clayton's opinions was that Plaintiff was able to seek medical treatment. His analysis fails to analyze consistencies between the Medical Source Statement and Plaintiff's treatment records, and, in addition to disregarding

Plaintiff's motivation to seek treatment for her myriad physical complaints, his explanation fails to take into account "critical differences between activities of daily living and activities in a full-time job," such as the fact that "a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

Rather than give weight to the opinion of Plaintiff's treating physician that her impairments would leave her unable to work in a competitive environment, the ALJ essentially adopted the opinion of a non-examining Agency physician who reviewed Plaintiff's medical records. ALJs are directed to "give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [her]." 20 C.F.R. § 404.1527(c)(1). Likewise, "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel*, 345 F.3d at 470 (finding error where "the ALJ did not explain how the evidence in the record contradicts [the examining physician]'s diagnosis"); *see also Vanprooyen v. Berryhill*, 864 F.3d 567, 572-73 (7th Cir. 2017) (finding error where "without any logical explanation, the administrative law judge gave substantial weight to the opinions of consulting physicians who had never examined [the plaintiff], saying only that they had provided "a good synopsis of the evidence" and that "their opinions are consistent with the overall record"); *Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016) ("[T]he problem is that the ALJ has not pointed to any logical reason to discount the opinions of the only examining mental-health professionals, one of whom was the state agency's own consultative examiner, in favor of a non-examining reviewer.").

Plaintiff also argues that the ALJ failed to adequately analyze her fibromyalgia and related limitations. The ALJ discounted the opinion of Plaintiff's treating physician, who diagnosed and treated her fibromyalgia, and the Court is concerned that the ALJ also discounted the diagnosis. The ALJ did not analyze or even mention any "physician's assessment over time of the person's physical strength and functional abilities" or the other criteria required by SSR 12-2p, 2012 WL 3104869, *2 (July 25, 2012), and did not include any reference to any medical professionals who concluded that Plaintiff is not suffering from fibromyalgia or even to any medical professionals who questioned the diagnosis. This leads to concerns that the ALJ improperly substituted his own judgment for that of Plaintiff's treating physician. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) "[A]dministrative law judges of the Social Security Administration[] must be careful not to succumb to the temptation to play doctor. . . . Common sense can mislead; lay intuitions about medical phenomena are often wrong."); *see also e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). These concerns are particularly poignant with regard to a fibromyalgia diagnosis. *See, e.g., Vanprooyen*, 864 F.3d at 572 ("The administrative law judge also rejected [the treating physician]'s opinion because it rested mainly on [the plaintiff]'s reports of pain. That, too, was error, because [the physician]'s medical-source statement concerned only [the plaintiff]'s fibromyalgia, which cannot be measured with objective tests aside from a trigger-point assessment.") (citing *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir. 1996); Suleman Bhana, "Fibromyalgia," American College of Rheumatology (March 2017), www.rheumatology.org/I-Am-A/Patient-Caregiver/Diseases-Conditions/Fibromyalgia). The Court is unable to determine how the ALJ analyzed Plaintiff's

fibromyalgia or incorporated its attendant limitations into the RFC, or whether he disregarded the diagnosis completely.

The pattern of error is also apparent in the ALJ's analysis of whether Plaintiff's impairments meet any of the Listings. "When evaluating the severity of an impairment, the ALJ assesses its functionally limiting effects by evaluating the objective medical evidence and the claimant's statements and other evidence regarding the intensity, persistence, and limiting effects of the symptoms." *Thomas v. Colvin*, 826 F. 3d 953, 960 (7th Cir. 2016). The ALJ's severity determination at Step Two is "a threshold requirement," *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (quotation omitted), and must be supported by substantial evidence. *Garmon v. Apfel*, 210 F.3d 374 (7th Cir. 2000).

In this case, Plaintiff argues that her symptoms meet the criteria for a number of Listings. First, she argues that she meets the listing requirements for chronic respiratory disorders and asthma because she has been diagnosed with severe hyperactive airways, bronchial asthma, and chronic sinusitis, with chronic emphysema and asthma that have continued despite surgery and numerous prescription medications. In general, the claimant bears the burden of proving that her condition meets all the criteria of a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). However, an ALJ's listing determination "must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett*, 381 F.3d at 668 (citing *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott*, 297 F.3d at 595-96; *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). In analyzing whether Plaintiff's disorders met the criteria for chronic pulmonary insufficiency or chronic asthmatic bronchitis, the ALJ merely described the requirements of each Listing without any description of how Plaintiff's symptoms and test results do or do not meet those criteria. As part of

the RFC analysis, the ALJ did mention the results of pulmonary function tests, but it is primarily a description of how the RFC incorporates her limitations rather than an analysis of the Listing. The Court is unable to determine whether or how the ALJ analyzed Plaintiff's symptoms and test results to determine whether her breathing disorders meet or equal a Listing.

The ALJ's analysis at Step Two was not supported by substantial evidence, and the ALJ erred in his analysis of the treating physician opinion. On remand, the ALJ is reminded of the need to thoroughly analyze the evidence of severe impairments in the record and that he "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618.

## IV. Conclusion

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Brief of Plaintiff [DE 17] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 3rd day of September, 2019.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record